UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **JEANETTE MORALES,** § | | |
| § | | |
| **Plaintiff,** § | | |
| v. § | **CIVIL ACTION NO.** | |
| § | | |
| **JO ANNE B. BARNHART,** § | **SA-05-CA-0439 OG (NN)** | |
| **Commissioner of the Social** § | | |
| **Security Administration,** § | | |
| § | | |
| **Defendant.** § | | |

**MEMORANDUM AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

**TO:**  Hon. Orlando Garcia
United States District Judge

## I. Introduction

Plaintiff Jeanette Morales seeks review and reversal of the administrative denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") by the Administrative Law Judge ("ALJ") on October 29, 2004.[1] Plaintiff contends that ALJ Karen McCoy's conclusion that plaintiff retained the residual functional capacity ("RFC") to perform work available in the local and national economies is not supported by substantial evidence of the record. For this reason, plaintiff requests that the court reverse, remand and order the entry of a finding of disability, or, in the alternative, remand the case for proper development.

After considering plaintiff's brief in support of her complaint,[2] defendant's brief in

---

[1] Docket Entries 3, 11, 13. **See also** Administrative Transcript ("Transcript") at 12-21.

[2] Docket Entry 11.

support of the Commissioner's decision,[3] plaintiff's reply brief,[4] the transcript of the Social Security Administration ("SSA") proceedings, the pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, it is my recommendation that plaintiff's request for relief be **DENIED**.

I have jurisdiction to enter this Memorandum and Recommendation under 28 U.S.C. § 636(b) and the District Court's Order referring all pretrial matters in this proceeding to me for disposition by order, or to aid in their disposition by recommendation where my authority as a Magistrate Judge is statutorily constrained.

## II. Jurisdiction

The District Court has jurisdiction to review the final decision of the Commissioner of Social Security as provided by 42 U.S.C. §§ 405(g), 1383.

## III. Administrative Proceedings

Based on the record in this case, plaintiff fully exhausted her administrative remedies prior to filing this action in federal court. Prior to the application for benefits at issue in this case, plaintiff had protectively filed an application on May 11, 1999, alleging disability beginning May 14, 1999.[5] The Commissioner initially denied this application on August 26, 1999, denied reconsideration, and dismissed the application for abandonment on July 27, 2000.[5] The final

---

[3] Docket Entry 12.

[4] Docket Entry 13.

[5] Transcript at 12.

[5] **Id.**

2

dismissal of the application provides the earliest date for the onset of disability under the current applications.[6] Plaintiff filed the instant applications for SSI and DIB at issue on January 7, 2003,[7] alleging a disability beginning May 14, 1999.[8] The Commissioner denied plaintiff's applications for benefits on March 13, 2003,[9] and her request for reconsideration on June 6, 2003.[10]

Plaintiff requested a hearing before an ALJ,[11] and the hearing was held on September 29, 2004, in San Antonio, Texas.[12] Jim Shepard represented plaintiff at the hearing.[13] At the administrative hearing, ALJ McCoy heard testimony from plaintiff, medical expert Dr. Randall B. King, and vocational expert Bill C. Brown.[14]

The plaintiff, who was forty-one (41) years of age at the September 2004 hearing, testified that she lived with her husband who she had married in July 2003.[15] Prior to her marriage, she lived with her two daughters, both of whom were over the age of 18 at the time of

---

[6] Transcript at 12.

[7] Plaintiff's applications for DIB and SSI are dated January 7, 2003.  Transcript at 56, 59 and 230, 234 respectively.  One disability determination shows the filing date to be January 7, 2003, while a second disability determination shows the filing date to be December 10, 2002.  Transcript at 28 and 235 respectively.  The ALJ's decision identifies the filing date as December 10, 2002.  Transcript at 12.

[8] Transcript at 56-59, and 230-234.

[9] Transcript at 30-36.

[10] Transcript at 38-41.

[11] Transcript at 42-43.

[12] Transcript at 12, 50, 258.

[13] Transcript at 258.

[14] Transcript at 258, 45, and 47.

[15] Transcript at 262, 263.

the hearing.[16] Plaintiff told the ALJ that she had a tenth grade education and had not tried to obtain a GED.[17] She did not have any vocational training; however, she could read and write and was right-handed.[18] Plaintiff testified that she had work experience as a short-order cook in a deli or coffee shop.[19]

At the time of the hearing, plaintiff worked four hours per day, four days per week, making tamales at a tamale factory.[20] Plaintiff worked at a table spreading dough that she then passed to another person.[21] She also had to lift trays or pots containing five dozen tamales, but the trays were not heavy.[22] Plaintiff testified that she can no longer lift fifty pound boxes of meat as stated in her work history report[23] because of her back problems, which include pain and bulging discs.[24] The company allows her to sit while working.[25]

When asked about her ability to perform daily and routine activities, plaintiff testified that she does not do much housework. She washes dishes and makes the bed.[26] She takes turns

---

[16] Transcript at 263.

[17] Transcript at 261.

[18] Transcript at 262.

[19] Transcript at 267, 268.

[20] Transcript at 265.

[21] Transcript at 267.

[22] Transcript at 284.

[23] Transcript at 78.

[24] Transcript at 284, 211-213.

[25] Transcript at 274.

[26] Transcript at 268.

cooking with her husband. Plaintiff cooks two or three times per week. Her husband does the cleaning.[27] Plaintiff stated that she had a valid driver license, but only drives about two times per week, and then only to the store "right down the street."[28] Plaintiff acknowledged that she knew how to use the bus, but she never used it.[29]

Plaintiff testified she did not presently use alcoholic beverages or any illegal drugs, but admitted she used cocaine in 2001.[30] At that time, she used cocaine two or three times over the course of the month, but she started to feel sick and stopped using it.[31] Plaintiff also testified that she had not used alcoholic beverages for two years.[32]

When asked about her medical impairments, plaintiff testified that she had Hepatitis C, diabetes, and neuropathy.[33] She reported constant pain in her legs along with cold and tingly sensations.[34] According to plaintiff, the neuropathy has damaged the nerves in her legs, and she has no feeling in her toes or feet up to her ankles.[35] Plaintiff testified that she has trouble walking and loses her balance frequently, especially after sitting. She also cannot stand for three or four

---

[27] Transcript at 268.

[28] Transcript at 263.

[29] **Id.**

[30] Transcript at 264.

[31] **Id.**

[32] Transcript at 265.

[33] Transcript at 272.

[34] Transcript at 271.

[35] Transcript at 272.

hours at a time.[36] Plaintiff confirmed a physician's report that diagnosed her with peripheral vascular disease and a vulva abscess. Plaintiff explained that the abscess recurs every two months and is treated with antibiotics and minor surgery. She stated that the abscess makes sitting painful and affects her ability to work.[37] Plaintiff also told the ALJ that she has carpal tunnel syndrome "in her hand" that affects her ability to do her job and requires her to wear a brace.[38]

ALJ McCoy also heard testimony from medical expert Dr. Randall B. King.[39] Dr. King noted that Dr. Rodriguez did a very well-documented examination of plaintiff on March 6, 2003.[40] Dr. Rodriguez diagnosed plaintiff with severe peripheral neuropathy in both lower extremities due to diabetes mellitus, sacralization at the L5 vertebra in her spine, but otherwise plaintiff had a normal neurological examination.[41] Based on the medical record, Dr. King opined that plaintiff suffers from mild to moderately severe peripheral neuropathy in her upper and lower extremities.[42] She may have a superimposed right carpal tunnel, but the medical examiner explained that it is difficult to diagnose in patients with diabetes because of the peripheral neuropathy.[43] Dr. King concluded that plaintiff did not match any of the Listings for medical

---

[36] Transcript at 274.

[37] Transcript at 273.

[38] Transcript at 275.

[39] Transcript at 276-283.

[40] Transcript at 276.

[41] Transcript at 276, 133.

[42] Transcript at 277.

[43] **Id.**

impairment and noted the impairment Listing for peripheral neuropathy was almost impossible to meet.[44]  The medical expert advised the ALJ that plaintiff's biggest problem was the "painful component of her diabetic neuropathy which... has a lot better established physiological basis than the pain that most people complain of."[45]  Dr. King explained that diabetes is the most common of the painful peripheral neuropathies and it can cause pain in the lower extremities.  He concluded that plaintiff's complaints of pain were physiologically based.[46]

ALJ McCoy also heard testimony from vocational expert Billy C. Brown.[47]  VE Brown classified plaintiff's past work as a short-order cook as light, semi-skilled, and based on the testimony, he classified her experience making tamales as a Mexican food worker (preparing food by hand), at a sedentary, unskilled level.[48]

The ALJ described a hypothetical individual with the following abilities:

> ...could lift and carry 20 pounds occasionally and 10 pounds frequently and could stand and walk four hours out of eight or sit eight out of eight and could occasionally stoop, bend, kneel, crouch, crawl, no ladders, ropes and scaffolds and no work at unprotected heights....

She then asked the vocational expert whether such a person could perform any of the past work performed by the plaintiff.[49]  VE Brown opined that the person could perform the work the

---

[44] Transcript at 277-278, 280.

[45] Transcript at 279.

[46] Transcript at 280.

[47] Transcript at 283-293.

[48] Transcript at 287-288.

[49] Transcript at 288.

plaintiff is currently performing at the tamale factory.[50] VE Brown further opined that a person with the abilities specified by the ALJ who was between forty (40) and forty-two (42) years old and had a tenth grade education could perform work as a light bench assembler, a telephone answering service employee, a cashier in a parking area, and a solderer on a production line.[51]

On October 29, 2004, ALJ McCoy issued her decision in which she concluded that plaintiff was not under a "disability," as defined by the Social Security Act ("the Act"), at any time through the date of the decision.[52] Specifically, ALJ McCoy found that plaintiff retained the RFC to perform work available in the local and national economies.

After receiving notice of the ALJ's unfavorable decision, plaintiff requested review of the hearing decision and order on December 8, 2004.[53] On March 16, 2005, the Appeals Council concluded that there was no basis upon which it could grant plaintiff's request for review, thereby denying plaintiff's request.[54] Plaintiff commenced the present action in this court on May 16, 2004.[55]

### IV. Issue Presented

> Is the ALJ's decision that plaintiff was not under a "disability," as defined by the Act, at any time through the date of the decision, supported by substantial evidence and does the decision comport

---

[50] Transcript at 289.

[51] Transcript at 289-291.

[52] Transcript at 12-21.

[53] Transcript at 9 and 8, respectively.

[54] Transcript at 4-6.

[55] Plaintiff submitted her complaint along with a motion to proceed *in forma pauperis* on May 12, 2005, Docket Entry 1, which was granted by Order entered on May 16, 2005, Docket Entry 2. The Clerk of Court filed the original complaint on May 16, 2005. Docket Entry 3.

plaintiff is currently performing at the tamale factory.[50] VE Brown further opined that a person with the abilities specified by the ALJ who was between forty (40) and forty-two (42) years old and had a tenth grade education could perform work as a light bench assembler, a telephone answering service employee, a cashier in a parking area, and a solderer on a production line.[51]

On October 29, 2004, ALJ McCoy issued her decision in which she concluded that plaintiff was not under a "disability," as defined by the Social Security Act ("the Act"), at any time through the date of the decision.[52] Specifically, ALJ McCoy found that plaintiff retained the RFC to perform work available in the local and national economies.

After receiving notice of the ALJ's unfavorable decision, plaintiff requested review of the hearing decision and order on December 8, 2004.[53] On March 16, 2005, the Appeals Council concluded that there was no basis upon which it could grant plaintiff's request for review, thereby denying plaintiff's request.[54] Plaintiff commenced the present action in this court on May 16, 2004.[55]

### IV. Issue Presented

> Is the ALJ's decision that plaintiff was not under a "disability," as defined by the Act, at any time through the date of the decision, supported by substantial evidence and does the decision comport

---

[50] Transcript at 289.

[51] Transcript at 289-291.

[52] Transcript at 12-21.

[53] Transcript at 9 and 8, respectively.

[54] Transcript at 4-6.

[55] Plaintiff submitted her complaint along with a motion to proceed *in forma pauperis* on May 12, 2005, Docket Entry 1, which was granted by Order entered on May 16, 2005, Docket Entry 2. The Clerk of Court filed the original complaint on May 16, 2005. Docket Entry 3.

with relevant legal standards?

## V. Analysis

**A. Standard of Review**

In reviewing the Commissioner's decision denying disability insurance benefits, the reviewing court is limited to a determination of whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[56] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[57] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[58]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[59] In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[60] Conflicts in the evidence and credibility assessments

---

[56] **Martinez v. Chater**, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

[57] **Villa v. Sullivan**, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting **Hames v. Heckler**, 707 F.2d 162, 164 (5th Cir. 1983)).

[58] **Abshire v. Bowen,** 848 F.2d 638, 640 (5th Cir. 1988) (quoting **Hames**, 707 F.2d at 164).

[59] **Martinez**, 64 F.3d at 173.

[60] **Ripley v. Chater**, 67 F.3d 552, 555 (5th Cir. 1995); **see also Villa**, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

are for the Commissioner and not for the courts to resolve.[61] Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[62]

**1. Entitlement to Benefits**

Every individual who is insured for disability insurance benefits, has not reached retirement age, has filed an application for benefits, and is under a disability is entitled to receive disability insurance benefits.[63] The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[64] A claimant shall be determined to be disabled only if his or her physical or mental impairment or impairments are so severe that he or she is unable to not only do his or her previous work, but cannot, considering his or her age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the

---

[61] **Martinez**, 64 F.3d at 174.

[62] **Id.**

[63] 42 U.S.C. § 423(a)(1).

[64] 42 U.S.C. § 1382c(a)(3)(A).

claimant would be hired if he or she applied for work.[65]

### 2. Evaluation Process and Burden of Proof

Regulations set forth by the Commissioner prescribe that disability claims are to be evaluated according to a five-step process.[66] A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[67]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[68] If so, the claimant will be found not disabled regardless of her medical condition or her age, education, or work experience.[69] The second step involves determining whether the claimant's impairment is severe.[70] If it is not severe, the claimant is deemed not disabled.[71] In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments.[72] If it meets or equals a listed impairment, the claimant is deemed disabled without considering his or her age, education, or work experience.[73] If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's RFC

---

[65] 42 U.S.C. § 1382c(a)(3)(B).

[66] 20 C.F.R. §§ 404.1520 and 416.920.

[67] **Leggett v. Chater**, 67 F.3d 558, 564 (5th Cir. 1995).

[68] 20 C.F.R. §§ 404.1520 and 416.920.

[69] **Id.**

[70] **Id.**

[71] **Id.**

[72] 20 C.F.R. §§ 404.1520 and 416.920.

[73] **Id.**

and the demands of his or her past work.[74] If the claimant is still able to do his or her past work, the claimant is not disabled.[75] If the claimant cannot perform his or her past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given his or her residual capacities, age, education, and work experience, to do other work.[76] If the claimant cannot do other work, he or she will be found disabled. The claimant bears the burden of proof at the first four steps of the sequential analysis.[77] Once the claimant has shown that he or she is unable to perform his or her previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform, but also, taking into account her exertional and non-exertional limitations, able to maintain for a significant period of time.[78] If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that he or she is unable to perform the alternative work.[79]

**B. Findings and Conclusions of the ALJ**

In the instant case, the ALJ reached her decision at step five of the evaluation process. At step one, the ALJ noted that plaintiff had worked for B & B Tamales making tamales by hand since her alleged onset date of disability and continues to work for the company, but not at a

---

[74] **Id.**

[75] **Id.**

[76] **Id.**

[77] **Leggett,** 67 F.3d at 564.

[78] **Watson v. Barnhart**, 288 F.3d 212, 217 (5th Cir. 2002).

[79] **Anderson v. Sullivan**, 887 F.2d 630, 632-33 (5th Cir. 1989).

level that constitutes substantial gainful employment.[80] ALJ McCoy then concluded at steps two and three that plaintiff had an impairment or combination of impairments (diabetic peripheral neuropathy of the upper and lower extremities) which were severe,[81] but did not meet or medically equal a listed impairment in Appendix 1, Subpart P, Regulation No. 4.[82] At step four, the ALJ found that plaintiff's work as a short-order cook and a Mexican food maker was not performed at the level of substantial gainful employment, and therefore, she did not have and could not perform past relevant work.[83] The ALJ determined that plaintiff retained the residual functional capacity to perform a significant range of light work.[84] At step five, the ALJ held that given plaintiff's age (defined as a younger individual),[85] education (limited education),[86] and vocational experience (no transferable skills from previous work),[87] plaintiff could perform work as a solderer on a production line, a bench work assembler, a telephone answering service employee, or a cashier in a parking area.[88] Based on the foregoing, ALJ McCoy concluded that plaintiff was not under a disability.[89]

---

[80] Transcript at 14; ¶ 2, at 20.

[81] Transcript at 14; ¶ 3, at 20.

[82] Transcript at 16-17; ¶ 4, at 20; **see also** 20 C.F.R. § 404, Part 404, Subpart P, Appendix 1 (containing the list of impairments).

[83] Transcript at 18; ¶ 7, at 20.

[84] Transcript at 19; ¶ 11, at 21.

[85] Transcript at 19; ¶ 8, at 20.

[86] Transcript at 19; ¶ 9, at 20.

[87] Transcript at 19, ¶ 10, at 21.

[88] Transcript at 19; ¶ 12, at 21.

[89] Transcript at 17-18, 20, ¶ 13, at 21.

**C. Plaintiff's Allegations of Error**

Plaintiff claims that the ALJ erred in determining that plaintiff was not under a disability as defined by the Act, and that the determination was not supported by substantial evidence. In particular, plaintiff contends that the ALJ improperly discredited plaintiff's complaints of pain. Plaintiff argues that the ALJ erred in properly applying the relevant law to the facts in considering plaintiff's assertion of disabling pain, failed to apply the Fifth Circuit standard for disabling pain, and failed to incorporate any non-exertional mental limitations caused by plaintiff's pain.

Plaintiff additionally contends that the ALJ failed to present the vocational expert with the added limitation of pushing and pulling in the hypothetical residual functional capacity assessment. Plaintiff argues the definition of light work requires the individual to be able push and pull arm or leg controls. Without the pushing and pulling function, plaintiff argues that the jobs cited by the ALJ are not the same jobs identified by the vocational expert in his testimony.

**1. Did the ALJ properly assess the plaintiff's credibility concerning her complaints of pain?**

In addition to reviewing the objective medical evidence, the ALJ is also required to consider a claimant's subjective complaints of pain when determining disability.[90] Whether pain is disabling is a matter within the discretion of the ALJ, and this determination is entitled to considerable deference.[91] Further, in order for pain to be disabling in nature, it "must be constant, unremitting, and wholly unresponsive to therapeutic treatment."[92]

---

[90] **Wren v. Sullivan**, 925 F.2d 123, 128 (5th Cir. 1991).

[91] **Id**.

[92] **Id.** at 128-29 (citing **Haywood v. Sullivan**, 888 F.2d 1463, 1470 (5th Cir. 1989)).

Social Security Ruling 96-7p clarifies the procedure to be used in assessing the credibility of a Social Security claimant's statements about symptoms and pain.[93]  The Ruling requires the ALJ to engage in a two-step process.  In the first step,

> the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the individual's pain or other symptoms.[94]

If an underlying physical or mental impairment that could reasonably be expected to produce the individual's pain has been established, the adjudicator

> must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.[95]

When the adjudicator needs additional information to assess the plaintiff's credibility, she should assess the following kinds of factors:

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning the individual's functional limitations and

---

[93] **Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims – Assessing the Credibility of an Individual's Statements**, SSR 96-7p, at 1.

[94] **Id.** at 2.

[95] **Id**.

restrictions due to pain or other symptoms.[96]

In this case, ALJ McCoy substantially complied with the analysis required by the SSR.[97] The ALJ included a detailed review of the objective medical evidence of plaintiff's impairments and resultant pain.[98] She identified plaintiff's moderate to severe diabetic peripheral neuropathy as an objective basis for her complaints of pain, and noted that the medical expert verified the objective evidence.  The ALJ then addressed plaintiff's specific complaints of pain and her limitations and pointed to specific parts of the record to show that plaintiff's symptoms were not disabling as plaintiff alleged.[99]  The ALJ considered plaintiff's part-time job, ability to do household chores, go grocery shopping with her husband, and that she drove a car regularly.[100] The ALJ noted that plaintiff claimed that she had difficulty walking and had been prescribed a cane; however, the record did not contain a prescription for a cane.

ALJ McCoy explained that plaintiff testified that she received relief from her symptoms by taking her medications.[101]  Plaintiff acknowledged she regularly takes five medications, and the medication was helping.[102]  The ALJ specifically identified Neutronin as lessening plaintiff's symptoms[103] and noted that plaintiff reported that her depression was better with Zoloft.

---

[96] **Id.** at 3.

[97] Transcript at 17.

[98] Transcript at 14-17.

[99] Transcript at 17.

[100] **See Leggett**, 67 F.3d at 565 n.12 (ALJ can consider daily activities to assist in determining the claimant's disability status).

[101] Transcript at 17.

[102] Transcript at 269.

[103] Transcript at 17.

Accordingly, the record belies plaintiff's contention that her pain is unwholly responsive to treatment.

Finally, the ALJ considered the effects of plaintiff's condition on her ability to work when determining that plaintiff was limited to light duty or sedentary work.[104] The ALJ relied on the report of the consultative examiner who found that plaintiff had normal motor and sensory function.[105] She then factored plaintiff's verified symptoms to determine her RFC.[106]

Accordingly, the ALJ did not err in her assessment of the credibility of plaintiff's complaints of pain, and the ALJ properly considered the effect of plaintiff's pain on her ability to perform substantial gainful work. Therefore, ALJ's decision is supported by substantial evidence, and reversal is not appropriate.

**2. Did the ALJ fail to properly assess plaintiff's RFC?**

Plaintiff contends that the ALJ committed reversible error in determining that she had the RFC to do "light work." Plaintiff argues that the ALJ failed to include extremity limitations of pushing and pulling twenty (20) pounds occasionally and ten (10) pounds frequently in the hypothetical that she presented to the vocational expert. As a consequence, the vocational expert identified jobs that did not reflect plaintiff's abilities.

Plaintiff's argument is not persuasive. While plaintiff is correct that the full range of light work can include pushing and pulling leg and arm controls,[107] the ALJ noted that plaintiff's exertional limits did not allow plaintiff to perform a full range of light duty work. She then

---

[104] **Id.**

[105] Transcript at 18.

[106] **Id.**

[107] 20 C.F.R. § 404.1567(b).

confined her inquiry with the vocational expert to those jobs that would permit plaintiff to work while sitting, but permit plaintiff to occasionally rise and move around.[108] The ALJ determined that plaintiff had the RFC to work as a solderer on a production line, do bench work assembly, work with a telephone answering service, and work as a cashier in a parking lot.[109] The vocational expert's description of these jobs does not include manipulating arm and foot controls.[110]

Furthermore, the telephone answering service and parking lot cashier jobs are considered sedentary level positions. Sedentary work involves lifting no more than ten (10) pounds at a time and occasionally lifting or carrying articles.[111] While sedentary work involves sitting, it often requires some walking and standing to perform job duties.[112] The ability to push and pull leg and arm controls is not necessary for sedentary work. Therefore, even if the ALJ had expressly included the pushing and pulling limitation requested by plaintiff, the added limitation would not have altered the vocational expert's opinion that plaintiff could perform the sedentary level jobs of telephone answering service employee and parking lot cashier. Accordingly, the plaintiff was not prejudiced by omission of the pushing and pulling limitations, and the ALJ's decision should not be reversed.[113]

---

[108] Transcript at 21, ¶ 10; 289-290.

[109] Transcript at 21, ¶ 10.

[110] Transcript at 289-293.

[111] 20 C.F.R. § 404.1567(a).

[112] **Id.**

[113] **See Carey v. Apfel**, 230 F.3d 131, 142 (5th Cir. 2000) (holding that the decision of the ALJ will not be reversed for failure to "fully and fairly develop the record unless the claimant shows that he or she was prejudiced by the ALJ's failure.").

## VI. Recommendation

Based on the foregoing, I recommend that plaintiff's request for relief be **DENIED**, her complaint (Docket Entry 3) **DISMISSED**, and the decision of the Commissioner **AFFIRMED**.

## VII. Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this Memorandum and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this Memorandum and Recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified by the District Court.[114] **Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the Magistrate Judge.** A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the District Court.[115] Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Memorandum and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed

---

[114] 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

[115] **Thomas v. Arn**, 474 U.S. 140, 149-152 (1985); **Acuña v. Brown & Root, Inc.**, 200 F.3d 335, 340 (5th Cir. 2000).

factual findings and legal conclusions accepted by the District Court.[116]

**SIGNED** on June 30, 2006.

                                       _____
                                       NANCY STEIN NOWAK
                                       UNITED STATES MAGISTRATE JUDGE

---

[116] **Douglass v. United Servs. Auto. Ass'n**, 79 F.3d 1415, 1428-29 (5th Cir. 1996).